People of Porto Rico, Plaintiff and Appellee, *v.* Telesforo Pérez, Defendant and Appellant.

No. 3758. Argued June 4, 1929.—Decided July 12, 1929.

*Eduardo López Tizol* for the appellant. *R. A. Gómez* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Telesforo Pérez was convicted and sentenced on a charge of embezzlement. He appealed to this court assigning in his brief sixteen errors.

In the first he alleges that the facts imputed to him in the information do not constitute a public offense.

The information in its pertinent part reads as follows:

"The aforesaid Telesforo Pérez within the period from August to September, 1924, and in the Paseo Covadonga of the municipality of San Juan, P. R., included in the Second Judicial District of San Juan lying south of a line drawn from the Governor's Palace along Allen street through Ponce de León Avenue and terminating at the Martín Peña Bridge, unlawfully, wilfully and maliciously and with intent to defraud, as he did defraud, the Ice Service Co., a company or corporation legally authorized to do business in Porto Rico, while discharging his duties as selling agent of ticket books of the Ice Service Co., appropriated to himself the sum of $618.50, the value of or proceeds from 65 ticket books, for his own benefit and for purposes other than the lawful performance of his duties, thus defrauding the said Ice Service Co. of the aforesaid sum of $618.50."

According to section 445 of the Penal Code, embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted, and in the case herein defendant Pérez is charged with the fraudulent appropriation of the proceeds from certain ticket books intrusted to him to be sold and the proceeds therefrom to be delivered to the owner thereof, the Ice Service Co. The information is sufficient. The fiduciary relation between the defendant and the defrauded company is specifically alleged therein where it is stated that both the delivery and the appropriation took place while the defendant acted in the capacity of selling agent of ice ticket books of the company.

The second assignment of error is as follows: "The court erred in failing to order the dismissal of the present case for failure to arraign the defendant or file the information in time."

The assignment is by its terms limited to the alleged failure to arraign the defendant or file the information in time; yet, the argument is broadened to include the ground of failure to hold the trial within the term of 120 days.

The motion to dismiss is not transcribed in the record, it being shown therein only that the motion was filed and overruled by the court.

There is, therefore, no basis for discussing and determining whether or not the trial was held in time, and as to whether the information was filed in time it is sufficient to say that it so appears from the very statements of the appellant, since he states that he was arrested on March 13, 1925, and that is precisely the date of the information. There is no specific showing in the record as to when the information was filed in the court, if this was not done on that date. It only appears that the arraignment took place on November 28, 1925, and the trial was held on January 15, 1926.

The defendant applied for a bill of particulars which was denied by the court. It is alleged by the defendant in his third assignment that such refusal was error. In our opinion no abuse of discretion on the part of the court has been shown. The information is as broad and detailed as could be required, and inasmuch as a detailed discussion of the particulars requested would render this opinion exceedingly long without any apparent benefit, we shall confine ourselves to what we have said.

In the fourth assignment the constitution of the jury which tried the case is challenged. It is the contention of the appellant that he was entitled to have the panel, from which the jury to try him was to be formed, drawn from the box containing the names of the three hundred jurors of the district, and that this was not done because there had been drawn from the same box another panel to serve in another section of the lower court.

The District Court of San Juan is composed of three judges who act separately. In 1925 the Legislature enacted Act No. 105, section 4 of which reads as follows:

"Section 4.—The distribution of the work of said court among the judges or sections thereof, as well as the order for the dispatch of business, shall be in accordance with the Codes of Civil and Crim-

inal Procedure, and with regulations to be prepared by a judicial council composed of the Attorney General and the three judges of the district court."

On November 23, 1925, and in the exercise of its powers the "Judicial Council" adopted the following rule:

"Owing to the great number of criminal cases pending trial before a jury two judges of the District Court of the Judicial District of San Juan, P. R., shall sit simultaneously in two different sections to try the said cases before a jury until the present congestion of cases in the Criminal Calendar shall have ended. This rule shall remain in force until the termination of the present criminal calendar and of the emergency which has brought it about."

In our opinion the rule is not in conflict with section 199 of the Code of Criminal Procedure which provides as follows:

"Whenever the criminal business of the district court requires the attendance of a trial jury, and no jury is in attendance, the court may make an order directing that a trial jury be drawn and summoned to attend before said court. Such order must specify the number of jurors to be drawn, which shall not exceed twenty-four, and the time at which the jurors are required to attend. And the court may direct that criminal cases, in which a jury may be required, be continued and fixed for trial when a jury shall be in attendance."

The same Legislature which ordered the constitution of jury panels reorganized the District Court of San Juan with a larger number of judges than those corresponding to other district courts of the Island, but without changing the provisions relative to the selection of jurors.

Criminal and civil cases had increased considerably in the district. Judges were appointed to meet that situation, and to enable them to perform their duties efficiently it was decided that two of them should simultaneously apply themselves to the trial of criminal cases and two panels of twenty-four jurors each were drawn from the same box. Nothing else could be done and we do not think that any fundamental right of the defendant was violated. The measure adopted was not at all a bar to the exercise of his right to challenge

and no objection could be raised as to the impartiality of the twelve jurors which finally heard his case. Granting that the panel drawn to attend before the judge which tried the case of the defendant had been so drawn after the other had been drawn, there were still left in the box 276 names. It is a fact that by reason of death, sickness and business as a rule more than twenty-four jurors are always really excused. What a better excuse than to be performing a public service in the same court, thus cooperating to make real the constitutional guaranty of a speedy trial for every defendant in the district?

The fifth and sixth assignments are unimportant. It was proper that witness R. I. Dunten, manager of the defrauded company, should testify as to the duties of the defendant as selling agent, in order to establish the fiduciary relation between the defendant and the company; and as to his being allowed to state "that he had heard it said," as no mention is made of what he had heard it said we are not in a position to decide whether or not the attitude of the court was error. Perhaps, as suggested by the *fiscal* in his brief, the witness might have heard something beneficial to the defendant.

It is alleged in the seventh assignment that the court ought not to have permitted the existence of the Ice Service Company to be proven by oral testimony, and in the eighth, that the court erred in permitting thereafter the introduction in evidence of the certificate of incorporation of the said company.

The evidence first introduced was sufficient. "The ownership of the goods," says Underhill in his treatise on Criminal Evidence, paragraph 286, "must be proved to be in some other person than the accused. When it is laid in a corporation, proof of a corporation *de facto* is enough. The charter or certificate of incorporation need not be produced."

It seems that the state, to meet any possible doubt on this point, introduced the certificate of incorporation and we do not think that the defendant can complain thereof.

It is alleged in the ninth assignment that the witness Carmen Prado, who was an employee of the injured party and who used to deliver the ticket books to the defendant, to receive the proceeds of their sale and to keep an account of everything, was permitted to testify in regard to confessions and admissions by the defendant.

There is no such error. The appellant seems to think that the same rule which obtains in confessions is applicable to this kind of evidence. That is not so. Every voluntary admission from the defendant on any material fact relevant to the case under investigation is admissible in evidence. Such admissions as a rule occur in the course of a conversation or in the execution of an act. If it were necessary to warn the defendant that the statements might be used against him and to comply with all the requirements preparatory to the taking of a confession in order to receive the admissions, these, perhaps, could never be offered in evidence, because at the time they are made no thought is usually given to any criminal prosecution.

Recently in *People* v. *Domínguez*, 39 P.R.R. 603, this court said:

"The third assignment is without merit. It was lawful to allow witness Juan E. Miranda to refer to a conversation between him and the accused in which the latter admitted certain facts that undoubtedly were prejudicial to him, but which did not constitute a real confession. Therefore the rule governing the admission of confessions was not applicable."

The jurisprudence on admissions in civil as well as in criminal cases is quite abundant. A portion thereof referring to the accused in criminal proceedings is thus resumed in Corpus Juris:

"Statements and declarations by accused, before and after the commission of the crime, although not amounting to a confession, but from which, in connection with other evidence of surrounding circumstances, an inference of guilt may be drawn, are admissible against him as admissions. Such statements and declarations are original

evidence and may be introduced without laying the foundation which is necessary when it is sought to impeach a witness. Admissions may be written as well as oral; and they are not limited to statements made at the time and place of the crime but may include statements made either before or after the date of the offense charged, provided they are not too remote in point of time. The state not only may prove such admissions but also may show when and where they were made. The statements and declarations may be testified to by a witness who is unable to recall the exact words, or who did not see the defendant at the time nor recognize his voice, provided the circumstances are such that the voice he heard could have been that of no person other than accused, but the admission, whether oral or written, must be identified as having been made by accused. Where the statements or admissions of accused tend to connect him with the offense with which he is charged, they are not rendered inadmissible by the fact that they also may tend to incriminate some other person not on trial. Indeed, a statement by accused that he can implicate another is an admission against interest and may be received in evidence. A statement made by accused is not inadmissible on behalf of the state by reason of the fact that it is vague, uncertain, or contradictory, or that it was not made in the presence of the person injured or killed by the crime. Evidence of defendant's voluntary declarations showing how the alleged crime was committed is admissible against him without regard to whether they were or were not against his interest at the time of utterance, where, at the time of the trial, such statements are inconsistent with a contention of defendant they may be introduced by the state; but where they are in favor of defendant they are not admissible in his behalf on account of their being self-serving declarations.'' 16 C. J. 626.

Nor was any error committed by the court, as alleged in the ninth assignment, in striking out a certain so-called opinion of the witness Carmen Prado.

No opinion of the witness was involved. When Carmen Prado stated that she used to say to Pérez " 'you will bring me the money tomorrow,' but Mr. Pérez would bring her the money from the sale of another book,'' she was basing her conclusion on the very behavior of the accused described by her.

By the eleventh and twelfth assignments error is imputed to the trial court in admitting in evidence pages 4 and 190

of the notebook used by Miss Prado to enter therein the deliveries of ticket books to the defendant, such entries to be canceled afterwards as the defendant handed her the proceeds therefrom, the error being predicated on the ground that the notebook bears no stamp or sign identifying it as the property of the injured corporation and only crosses appear therein.

The leaves from the notebook were introduced in connection with the testimony of the witness. The entries were made in the very act of the transaction. Therefore they were part of the *res gestae* and consequently admissible in evidence. The error does not exist.

The thirteenth assignment deals with the same matter as the ninth. It is alleged that the court should not have permitted the witnesses Carmelo Rodríguez, Alberto Núñez, José López Cepero and O. B. Frazer to testify as to the admissions of the defendant. We have examined their statements and they all refer to different voluntary admissions of the defendant directly connected with the offense charged.

The fourteenth assignment refers to the error alleged by the appellant to have been committed by the trial court in not permitting the witness Francisco Carrera to give expert testimony.

The witness testified extensively on the ice sale system by means of ticket books and, after he had proceeded rather far in his testimony, he repeatedly stated that he had not come to give expert testimony and that he did not pretend to so testify. The judge then decided not to admit the testimony of the witness as expert testimony, both by reason of the witness's own statements and because his testimony referred to an ice company of Bayamón whose ticket books were different from those of the Ice Service Company. We do not find that any error was committed.

The errors assigned as the fifteenth and sixteenth are also inexistent. The jurisdiction of the District Court of San Juan is expressly alleged in the information and the evidence is sufficient. The fact that the defendant was a man of good

reputation and well liked in the community gives way before the concrete evidence of the punishable act committed by him.

The judgment appealed from must be affirmed.